UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH


**RICK WILSON**
      Plaintiff

**v.**                                                   **No. 5:06CV-00004-J**

**JO ANNE B. BARNHART**
      Commissioner of Social Security
      Defendant


**MAGISTRATE JUDGE'S REPORT
and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Donna Thornton-Green. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 12 and 14, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on February 23, 2004, by administrative law judge (ALJ) Thomas Bryan, Jr. In support of his decision denying Title II and Title XVI benefits, Judge Bryan entered the following numbered findings:

1.  The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2.  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.  The claimant is status post bilateral knee replacements in 1998, which is considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).

4.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.  The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.  The claimant has the residual functional capacity to perform a range of light and sedentary work.  He can lift and carry, push and pull 20 pounds occasionally and 10 pounds frequently. Standing and/or walking are limited to at least two hours in an eight-hour workday.  He would be required to periodically alternate sitting and standing to relieve pain or discomfort.  He should never climb, balance, kneel, or crawl, and only occasionally crouch and stoop.

7.  The claimant is unable to perform any of his past relevant work (20 CFR  §§ 404.1565 and 416.965).

8.  The claimant is a "younger individual between the ages of 45 and 49" (20 CFR §§ 404.1563 and 416.963).

9.  The claimant has a "high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).

10.  The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR  §§ 404.1568 and 416.968).

11.  The claimant has the residual functional capacity to perform a range of light and sedentary work (20 CFR  §§ 404.1567 and 416.967).

12.  Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 201.21 and 202.21 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform.  Examples of such jobs include work as a cashier, a shipping/receiving clerk, and a stock inventory clerk.

13.  The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR  §§ 404.1520(f) and 416.920(f)).

(Administrative Record (AR), pp. 28-29).

## Governing Legal Standards

1.  The court has jurisdiction to examine the record that was before the Commissioner on the date  of  the Commissioner's final  decision  and to enter a judgment affirming, modifying, or reversing that decision.  42 U.S.C. § 405(g), sentence four.  In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are

supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age

of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act.   To qualify for supplemental security income (SSI) benefits, a claimant  must  file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act.     The  determination of disability is essentially the same for Title II and Title XVI purposes.

3.  Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe."  A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that  are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking.  20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's  ability   to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985).  Any physical or mental impairment that has more than a <u>de minimis</u>, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3.   In addition,  the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R.  §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment

defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a <u>prima facie</u> showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). Accordingly, the focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

<strong>Background Information</strong>

The plaintiff has filed a total of three sets of applications for Title II and Title XVI benefits. The first set was filed in July of 1998 (AR, pp. 55-60). In the Disability Report accompanying the applications, the plaintiff stated that he suffered from an impairment affecting both knees, rheumatoid arthritis, and lupus. He alleged disability due to an inability to stand or walk for any significant time because "cartilage completely gone" and due to an inability to manipulate objects because "the arthritis also has had a profound effect on my hands, to grip or carry something for any length of time is very painful" (AR, pp. 82 and 87).

In July of 1998, the plaintiff's treating rheumatologist, Howard Fuchs, M.D., provided a

narrative report that confirmed the presence of "bilateral knee pain as well as pain in the small joints of the hands" (AR, p. 181). Dr. Fuchs further stated as follows (AR, p. 182):

> His hand function is much better than it was a year ago. He will have exacerbations of his arthritis after doing significant manual labor. I think that after that exacerbation, his functional status is much worse for three to five days. I would not expect him to be able to grasp and carry heavy loads for any significant amount of time during the day (greater than 20 lbs. for greater than 30 minutes).

In July of 1998, the plaintiff was awarded benefits but declined the award because "I will be having [bilateral knee replacement] surgery" and "I have decided to work full time as long as I can" (AR, pp. 94 and 328). In August and again in October of 1998, the plaintiff underwent bilateral knee replacement surgery (AR, p. 193).

Thereafter, the record reflects that the plaintiff struggled, ultimately unsuccessfully, to continue working at General Fire Extinguisher Service, Inc., in Paducah, Kentucky, as a fire extinguisher technician, a job which he "loved" (AR, p. 121). The plaintiff testified that, near the end of his employment, his son, who also worked at General Fire Extinguisher, was "covering my tail most of the time if you want to know the truth" (AR, pp. 390-391).

In July of 2002, the plaintiff filed a second set of applications for Social Security disability benefits in which he alleged an onset of disability date of July 1, 2002 (AR, pp. 97-106). The denial of these applications is presently before this court upon judicial review. The disability onset date of July 1, 2002, corresponds to the date on which the plaintiff "went part time" at General File Extinguisher (AR, p.129). In a letter to counsel dated July 14, 2003, the plaintiff's employer, Bob Fesmire, opined, in part, as follows (AR, p. 170):

> Though Mr. Wilson is still employed here, since becoming part-time his duties have

6

virtually become non-existent. ...  When I say work ... his duties have for the most part been reduced to that of a consultant. ...  I truly felt and continue to feel sorry for him. ...  His health most certainly severely limits his physical work. ...  I try and justify his position, but I am reaching a point that I feel the company cannot continue to pay this amount of money for the return it is receiving.

In his written decision, the ALJ found that "the claimant's earnings have not risen to the level of substantial gainful activity at any time since his alleged onset date" (AR, p. 19).

The administrative hearing was held in August of 2003.  At the time of the hearing, the primary medical evidence bearing upon the extent of the plaintiff's physical and mental limitations consisted of Dr. Fuch's narrative report from July of 1998, mentioned above, and the findings of the non-examining state agency program consultants.   In October of 2002, consultant Fernando Pajo, M.D., concluded, among other things, that there are "no manipulative limitations established," i.e., no evidence of "severe," or vocationally significant, limitations with respect to reaching, handling (gross manipulation), fingering (fine manipulation), or feeling (AR, p. 277).  In October of 2002, consultant Dan Vandivier, Ph.D., found a "non-severe" affective (i.e., depressive) disorder to be present, which would be expected to impose no more than "mild" functional limitations  (AR, pp. 283, 2867, 293).

At the hearing, the plaintiff testified that arthritis in his hands prevented him from handling fire extinguishers and that "just sitting here my hands are aching" (AR, pp. 378 and 382).  The plaintiff had previously indicated that the arthritis in his hands made it difficult for him to handle objects such as golf clubs (AR, p. 121).  The plaintiff also testified to depression and feelings of "worthlessness" (AR, p. 389).  The plaintiff takes Prozac for this condition (AR, p. 390).  At the close of the hearing, the ALJ indicated that he would leave the record open for the purpose of scheduling an orthopedic examination of the plaintiff (AR, p. 395).

7

On September 27, 2003, the plaintiff was examined, at the Commissioner's request, by orthopedist Justin Ogden, M.D.   In his narrative report, Dr. Ogden advised as follows (AR, pp. 303 and 304):

> In reference to his hands and their involvement in his arthritis, he should be limited from any fine manipulative activities, any activities which require significant grip strength.  Gross motor skills would be okay. ...  He does have some difficulty manipulating shoelaces and buttons.

Dr. Ogden appended to his report a completion of the standard physical assessment form.  Among other things, Dr. Ogden opined that the plaintiff can only "occasionally" engage in "reaching all directions (including overhead)" and in "fingering (fine manipulation)" (AR, p. 308). "Occasionally" was defined as "occurring from very little up to one-third of an 8-hour workday" (AR, p. 306).

On August 20, 2003, just two days after the hearing, and upon referral by counsel, the plaintiff began seeing Steven Alexander, Ph.D., for his mental impairments (AR, p. 313).  In a narrative report dated October 30, 2003, Dr. Alexander opined that the plaintiff suffers from several mental impairments that would be expected to "impact on his ability in a full range of work activity" (AR, p. 311).

On February 23, 2004, the ALJ issued his denial decision, which is presently before this court upon judicial review.  The ALJ rejected Dr. Alexander's finding of a "severe" mental impairment and, instead, deferred to Dr. Vandivier's prior finding of no "severe" mental impairment that would satisfy the twelve-month duration requirement contemplated by 20 C.F.R.  §§ 404.1509 and 416.909.    The ALJ also rejected Dr. Ogden's opinion that the plaintiff has "severe" manipulative limitations, and accepted Dr. Pajo's prior finding of no such restrictions.  The plaintiff's principal contention upon judicial review is that the ALJ erred in finding non-severe manipulative and mental impairments.

8

After the ALJ's denial decision, counsel advised the plaintiff to file a third set of applications for benefits. On May 25, 2004, the plaintiff was examined, at the Commissioner's request, by J. Thomas Muehleman, Ph.D. Dr. Muehleman diagnosed a depressive disorder and an anxiety disorder and opined, among other things, that the plaintiff would be "moderately to markedly impaired in his ability to tolerate the stress and pressures associated with day to day work activity at this time" (AR, p. 363). The plaintiff's Title XVI application was successful, and he began receiving monthly payments in July of 2004 (AR, p. 358).

Evidence submitted by a claimant after the Commissioner's final decision may be considered by a reviewing court only for the limited purpose of determining whether to grant a motion for a "sentence six" remand. *Cline v. Commissioner*, 96 F.3d 146 (6th Cir., 1996). Because the plaintiff has not requested such a remand and has not alleged or established that Dr. Muehleman's findings are material, the court should disregard Dr. Muehleman's findings for purposes of the present judicial review.

The plaintiff's Title II claim apparently awaits final resolution with respect to his second Title II claim, which is presently before this court. The plaintiff remains insured for Title II benefits through December 31, 2006. Therefore, the issue before the court is the plaintiff's disability status for the closed period from July 1, 2002, his alleged onset of disability date, through April 1, 2004, when he commenced receiving Title XVI benefits.

This case was denied at the fifth and final step of the sequential evaluation process based upon testimony from a vocational expert (VE). The controlling vocational hypothetical contemplated the limitations set forth in ALJ's Finding No. 6, which included no manipulative or mental restriction. The plaintiff argues that, in light of the post-hearing findings of Drs. Ogden and

Alexander,  the ALJ's finding of no severe manipulative or mental impairment lacks substantial support in the record.

**Manipulative Impairment**

As noted above, Drs. Fuchs and Ogden found that the plaintiff has manipulative limitations. The ALJ rejected these findings because "there were no objective findings to support these limitations other than the subjective allegations of the claimant" (AR, p. 21).  Instead, the ALJ "gives greatest weight to the determination of the State Agency non-examining physicians" (AR, p. 26).

A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that  are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking.   20 C.F.R.   §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability  to work, irrespective of age, education and  work  experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985).  Any physical or mental impairment that has more than a <u>de minimis</u>, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3.  Accordingly, the third "severe" step of the sequential evaluation process is generally regarded as a preliminary screening out of totally groundless claims based upon a medical impairment that are so obviously insignificant that it is unnecessary to obtain vocational testimony with respect to the actual effect of the impairment upon the claimant's ability to work.  Also, an impairment may be regarded as non-severe if, though severe at the time, it does not satisfy the so-called duration requirement, i.e., the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months."  20 C.F.R.  §§ 404.1509 and 416.909.

10

The magistrate judge concludes that the ALJ erred in finding a non-severe manipulative impairment due to lack of an objective medical basis.  Drs. Fuchs and Ogden had as much of an clinical basis for their diagnoses of a manipulative impairment as was possible given the nature of the impairment, i.e., rheumatoid arthritis and lupus.  In his decision, the ALJ himself recounted some of the evidence indicating the presence of a "severe" manipulative limitation, to-wit (AR, pp. 20-21):

> On April 3, 1997, the claimant was prescribed Plaquenil and Feldene for treatment of an inflammatory arthritis affecting the small joints in his hands.... [H]is physical exam was more consistent with rheumatoid disease.  He continued to have active arthritis one year later when he returned to the Vanderbilt University Medical Center having increased swelling in his hands....  Sulfasalazine was added to his other medications and he was assessed with an acute exacerbation of his inflammatory arthritis.  He returned on May 19, 1998, with continued puffiness, but good bilateral grip strength and very little in the way of joint tenderness. ...  Dr. Fuchs indicated that the claimant's hand function was much better than it was one year prior, but indicated that the claimant would have exacerbations of his arthritis after doing significant manual labor.  He restricted the claimant to avoid grasping and carrying heavy loads for any significant amount of time during the day....  The consultative examiner [Dr. Ogden] limited the claimant from fine manipulative activities requiring significant grip strength.  Gross motor skills would be okay.

Despite the foregoing, the ALJ found no severe manipulative limitation because, at his one-time examination of the plaintiff, Dr. Ogden found that the plaintiff's "bilateral upper extremities were within normal limits with good grip strength, normal sensation, and normal range of motion" (AR, p. 21).  The magistrate judge concludes that the quoted findings by Dr. Ogden do not undermine his conclusion that a manipulative limitation was present.

The ALJ also attempts to deny the presence of a manipulative impairment by stating that "the claimant is taking no medication for inflammatory arthritis in his hands and has sought relatively no treatment since 1998 for his bilateral hand complaints" (AR, p. 21).  This finding appears to be somewhat inconsistent with the ALJ's own subsequent assertion that the plaintiff "alternates between Naproxen and Ibuprofen for anti-inflammatory use" (AR, p. 23).  Furthermore,

it is not apparent that there is any available treatment for the plaintiff to seek with respect to his manipulative impairment except for the anti-inflammatory medication he already takes. The magistrate judge concludes that the record adequately shows that the plaintiff suffers from an abnormality that would be expected to have more than a minimal effect, irrespective of age, education, and work experience, upon an individual's ability to work. Therefore, the ALJ erred in discounting the uncontradicted findings of the post-hearing consultative examination the ALJ himself ordered and in finding a non-severe manipulative limitation.

The remaining issue is whether the error was a reversible or a harmless error. The ALJ issued a step-five denial decision, finding that the plaintiff retains the ability to perform the following jobs in the national economy: cashier, shipping/receiving clerk, and stock inventory clerk. ALJ's Finding No. 12. The evidence does not establish that these jobs require no significant ability to manipulate objects. Therefore, the error was not harmless. This matter must be remanded to the Commissioner for a new decision that includes a finding of a "severe" manipulative impairment, for completion of the sequential evaluation process, and, if necessary, for supplemental vocational testimony.

### Mental Impairment

Next, we consider whether the ALJ erred in finding no "severe" mental impairment satisfying the duration requirement (AR, p. 22). The plaintiff correctly notes that as early as May of 2001, he was prescribed Prozac for depression (AR, p. 262). However, the mere diagnosis of an impairment "says nothing about the severity of the condition." *Higgs v. Secretary*, 880 F.2d 860, 863 (6th Cir., 1988). Having discounted Dr. Muehleman's findings for the reasons indicated above (i.e., they were not before the ALJ), except for the plaintiff's own testimony, the

12

sole remaining evidence in the record of significant mental limitations was the post-hearing consultative examination results of Dr. Alexander.

As a threshold matter, the court must consider whether Dr. Alexander is an "acceptable medical source," whose opinion may be entitled to special or controlling weight. In the area of psychological expertise, the following individuals are deemed to be "acceptable medical sources":

> *Licensed or certified psychologists.* Included are school psychologists, or other licensed or certified individuals with other titles who perform the same function as a school psychologist in a school setting, for purposes of establishing mental retardation, learning disabilities, and borderline intellectual functioning only;

20 C.F.R. § 404.1513(2).

Although we cannot find Dr. Alexander's <u>curriculum vitae</u> in the record, it is not apparent that he is a licensed or certified psychologist.   Dr. Alexander identified himself as a "licensed professional clinical counselor" (AR, pp. 310-311).  The evidence fails to establish that Dr. Alexander possesses the expertise to "establish whether you have a medically determinable impairment(s)"as contemplated by 20 C.F.R. § 404.1513(a).   Nor is it apparent that the ALJ erred in his consideration of Dr. Alexander's opinion as an "other source" as contemplated by 20 C.F.R. § 404.1513(d).  In any event, the record reflects that Dr. Alexander saw the plaintiff only from August through October of 2003.  The magistrate judge concludes that the ALJ did not err in finding that Dr. Alexander's assessment failed to establish that the plaintiff's mental impairment satisfied the twelve-month duration requirement.

13

## RECOMMENDATION

The magistrate judge RECOMMENDS that this matter must be REMANDED to the Commissioner for a new decision that includes a finding of a "severe" manipulative impairment, for completion of the sequential evaluation process, and, if necessary, for supplemental vocational testimony.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The court shall not conduct a de novo review of objections that are general, conclusory, or merely adopt previous pleadings. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

14